# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

---

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| OFFICE PROPERTIES INCOME TRUST, *et al.*, | : | Case No. 25-90530 (CML) |
| | : | |
| Debtors.[1] | : | (Joint Administration Requested) |
| | : | |

---

## EMERGENCY MOTION OF DEBTORS FOR
## ENTRY OF AN ORDER (I) AUTHORIZING DEBTORS TO PAY
## TENANT OBLIGATIONS; AND (II) GRANTING RELATED RELIEF

> **Emergency relief has been requested. Relief is requested not later than 2:00 p.m. (prevailing Central Time) on November 3, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on November 3, 2025 at 2:00 p.m. (prevailing Central Time) in Courtroom 402, 4th floor, 515 Rusk Street, Houston, Texas 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "Judge Lopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez's home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] A complete list of the Debtors in the Chapter 11 Cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/OPI. The Debtors' mailing address is Two Newton Place, 255 Washington Street, Suite 300, Newton, Massachusetts 02458-1634.

Office Properties Income Trust and its debtor affiliates in the above-captioned Chapter 11 Cases (as defined herein), as debtors and debtors in possession (collectively, the "***Debtors***"), respectfully state as follows in support of this motion (this "***Motion***"):

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order (the "***Proposed Order***"), substantially in the forms attached hereto: (a) authorizing, but not directing, the Debtors to pay Tenant Obligations (as defined below) as they come due in the ordinary course, whether they became due and payable prior to or after the Petition Date; and (b) granting related relief.

## JURISDICTION AND VENUE

2. The United States Bankruptcy Court for the Southern District of Texas (the "***Court***") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory and legal predicates for the relief requested herein are sections 105, 363(b), 365(d)(3), 503(b)(1), 1107(a), and 1108 of title 11 of the United States Code (the "***Bankruptcy Code***"), rules 6003(b), 6004(a), 6004(h) of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), rule 9014 of the Bankruptcy Local Rules for the Southern District of Texas (the "***Bankruptcy Local Rules***"), and the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

4. On the date hereof (the "***Petition Date***"), the Debtors each commenced with the Court a voluntary case (collectively, the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in

2

possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

5. Contemporaneously with the filing of the Motion, the Debtors filed a motion requesting joint administration of the Chapter 11 Cases, for procedural purposes, pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

6. Office Properties Income Trust ("**OPI**", and, together with the other Debtors and their non-Debtor subsidiaries, collectively, the "**Company**"), is a real estate investment trust ("**REIT**") formed in 2009 under Maryland law. The Company is focused on owning and leasing office properties to high credit quality tenants in markets throughout the United States. The Company seeks to maintain a diverse revenue base across geographies with ownership in central business districts, urban infill and suburban locations. As of the Petition Date, the Company owns 124 properties containing approximately 17.2 million rentable square feet with over 220 tenants, including government entities. The Company has no employees. The personnel and various services the Company requires to operate its business and properties are provided by The RMR Group LLC ("**RMR**") pursuant to two agreements: a business management agreement and a property management agreement (together, collectively, the "**RMR Management Agreements**"). RMR is an alternative asset management company that is focused on commercial real estate and related businesses. Among other responsibilities, RMR provides strategic and real estate management and administrative services to the Company.

7. On October 30, 2025, the Debtors entered into that certain Restructuring Support Agreement (as may be modified, amended, or supplemented and including all exhibits, schedules, or supplements thereto, the "**Restructuring Support Agreement**") with (a) an ad hoc group of secured noteholders (the "**September 2029 Ad Hoc Group**") that collectively hold, own, or control

more than approximately 80% of the aggregate outstanding principal amount of the 9.000% senior secured notes due September 2029 and (b) RMR, in its capacity as manager to the Company, pursuant to which the September 2029 Ad Hoc Group and RMR have agreed to support the Company's restructuring on the terms set forth therein.

8. The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of John R. Castellano in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.[2]

## TENANT OBLIGATIONS

9. The Company's business consists of owning and leasing properties throughout the United States. In the ordinary course of business, the Company enters into new and renewal lease agreements with building tenants. Pursuant to the terms of its leases, the applicable Debtor, as landlord, is required to pay for obligations under or in conjunction with the leases in accordance with the time periods specified therein, including (a) paying tenant improvement allowances ("***Tenant Allowances***"), (b) paying brokerage fees payable with respect to leases ("***Broker Fees***"), and (c) making payments of General Refunds, Security Deposit Refunds, Association Dues and Disputed Amount Refunds (each as defined below) owed to or on behalf of tenants in the ordinary course of the operation of the Debtors' properties and/or administration of the Debtors' leases (the "***Related Tenant Obligations***" and, together with Tenant Allowances and Broker Fees,

---

[2] Capitalized terms used but not otherwise defined herein have the meaning assigned to them in the First Day Declaration.

collectively, the "***Tenant Obligations***") (all as further described below).[3] An estimate of the prepetition Tenant Obligations is set forth below.

| Category | Amount |
|---|---|
| Tenant Allowances | $6,200,000 |
| Broker Fees | $680,000 |
| Related Tenant Obligations | $1,293,000 |
| **Total** | **$8,173,000** |

**I.     Tenant Allowances**

10.     A tenant improvement allowance is a specified dollar amount that the Company, as a landlord, agrees to pay to the tenant for leasehold improvements paid for by and performed at the direction of the tenant.[4] Reimbursement or payment of such amounts to the tenants are conditioned upon the tenant following the reimbursement or payment protocols outlined in the applicable leases.

11.     Tenant Allowances are common in the commercial real estate industry. Among other reasons, the Debtors use Tenant Allowances to incentivize tenants to sign long-term lease agreements at the Debtors' properties. As explained below, the failure to pay Tenant Allowances, including work for which there is outstanding prepetition amounts due, would cause immediate

---

[3]   In addition to the Tenant Obligations, in the ordinary course of business and if consistent with market terms, the Debtors incentivize tenants to renew or enter into new leases by offering various periods of rental concessions (the "***Tenant Concessions***"). The Tenant Concessions do not entail the expenditure of cash.

[4]   As more fully described in the Vendor Motion, the Debtors make payments in the ordinary course of business to third-party vendors and service providers (the "***Lien Claimants***") for services related to maintenance, repair, improvements and servicing of properties and building systems that are essential to the Debtors' businesses. Similar to the Tenant Allowances, payments to such Lien Claimants may be required by the terms of the Debtors' leases; however, the Debtors are not seeking authority to pay any Lien Claimants or other third-party vendors or service providers in connection with Tenant Allowances pursuant to this Motion and such relief is sought only in the Vendor Motion. There is no duplication between the relief sought pursuant to this Motion and the relief sought pursuant to the Vendor Motion.

and irreparable harm to the operation of the Debtors' properties by, among other things, causing the Debtors to be in default under their lease agreements, making it impossible for the Debtors to attract new tenants, and damaging the Debtors' reputation in the marketplace.

12. The Debtors estimate that there is a total of approximately $62.9 million of potential Tenant Allowances that they are contractually obligated to fund under prepetition leases. Of that amount, approximately $29.3 million is expected to become due in the next year and approximately $6.2 million is related to prepetition obligations for work initiated or completed prepetition. The $6.2 million amount also includes Tenant Allowances for which work was started prior to the Petition Date, in whole or in part, but for which (a) the work may not have been completed prepetition, and/or (b) the tenant has not submitted the required documentation or satisfied other contractual prerequisites to obtain reimbursement prepetition.

13. Pursuant to the Motion, the Debtors seek authority, but not direction, to pay, in the Debtors' discretion, prepetition Tenants Allowances and other similar expenses owed to tenants in the ordinary course of business and to continue paying Tenant Allowances and other similar expenses owed to tenants in the ordinary course on a postpetition basis.

**II.     Broker Fees**

14. Commercial leasing brokers provide essential services for the Debtors including, among other things, identifying and bringing tenants to the Debtors' properties and facilitating new or renewal leases at the Debtors' properties. Property owners generally engage leasing brokers to market vacant space and tenants generally engage leasing brokers to show them available properties and assist in negotiating lease terms. The lease agreements between the Debtors and tenants typically require the Debtors, as landlords, to pay the Broker Fees of the agent representing the tenant as well as the broker representing the Debtor. If the Debtors fail to pay Broker Fees, it may result in a default under applicable lease agreements, cause a contractual default under the

Debtor-landlord's agreements with its brokers and/or under any agreements the Debtor-landlord may have directly with the tenant brokers, and could make brokers reluctant to recommend leases at the Debtors' properties and damage the Debtors' relationships with their national and regional tenants and brokers.

15. As of the Petition Date, the Debtors estimate that they owe approximately $680,000 in prepetition Brokers Fees. Pursuant to the Motion, the Debtors seek authority, but not direction, to pay, in the Debtors' discretion, prepetition Broker Fees and other similar expenses owed to brokers and to continue paying Broker Fees and other similar expenses owed to brokers as they come due in the ordinary course of business.

### III.     Related Tenant Obligations

16. In addition to Tenant Allowances, in the ordinary course of business, the Debtors are obligated pursuant to their lease agreements to make certain payments to or on behalf of tenants, including, among other things: (a) refunds and credits owed to tenants, including on account of prior overpayments for common area maintenance fees, taxes, or other expenditures for which tenants overpaid (the "***General Refunds***"); (b) refunds and returns of cash security deposits at the expiration or termination of a lease (the "***Security Deposit Refunds***"),[5] and (c) fees and dues, such as parking fees and building association dues and other similar fees, dues, or expenses, owed to third parties and required to be paid by a Debtor pursuant to the applicable lease agreement (the "***Association Dues***"). Generally, the Debtors pay Association Dues directly to the applicable third parties, while the Debtors pay the Security Deposit Refunds in cash directly to the applicable tenants. The Debtors may pay General Refunds directly to the applicable tenants in cash or may

---

[5]  The Debtors are also the beneficiaries of 19 outstanding letters of credit issued on behalf of 19 tenants in lieu of cash security deposits by 13 different banks totaling approximately $13.2 million in the aggregate.

credit such General Refunds against the tenants' upcoming rent payments, depending on the lease terms.

17. As of the Petition Date, the Debtors estimate that they hold approximately $8.1 million in security deposits for tenants in cash.

18. Pursuant to the Motion, the Debtors seek authority, but not direction, to pay, in the Debtors' discretion, prepetition Related Tenant Obligations as they come due in the ordinary course of business. The total prepetition Related Tenant Obligations amount that the Debtors seek authority to pay includes $1,224,000 owed to tenants as Security Deposit Refunds and $69,000 owed to third parties as Association Dues. The Debtors are not aware of any prepetition amounts owed in respect of General Refunds; however, out of an abundance of caution, the Debtors seek authority, but not direction, to pay, in the Debtors' discretion, any prepetition General Refunds as they come due in the ordinary course of business. In addition, the Debtors seek authority, but not direction, to continue paying in the Debtors' discretion, Related Tenant Obligations as such obligations become due, consistent with their past practices and in the ordinary course of business. The Debtors believe that such payments are necessary to avoid defaults under their lease agreements, maintain positive tenant relations and avoid potential disruptions to occupancy or lease compliance. The Debtors will also continue to refund security deposits and return letters of credit in the ordinary course as leases expire.

**BASIS FOR RELIEF**

**I.   Payment of Tenant Obligations Is Warranted Under Section 363(c) of the Bankruptcy Code**

19. It is commonplace for businesses in the Debtors' industry which own and lease properties to high credit quality tenants across the United States, to perform and/or pay obligations to their tenants pursuant to the underlying lease agreements. Continued payment of the Tenant

8

Obligations in the ordinary course of business is essential to the Debtors maintaining their relationships with their tenants, and the brokers. Section 363(c) of the Bankruptcy Code authorizes such relief.

20. Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business … and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary course transactions required to operate its business without unneeded oversight by its creditors or the court. *In re HLC Props., Inc.*, 55 B.R. 685, 686 (Bankr. N.D. Tex. 1985) (finding "no need to further burden the docket or the staff of the court with a superfluous order" when a transaction is in the ordinary course of business); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997). Courts assess whether a transaction is within the ordinary course of business pursuant to a two prong test: "(i) the 'vertical' test, which asks whether the transaction fell within the scope of a debtor's pre-petition business practices (considering whether the transaction would fall within a hypothetical creditor's expectations), and (ii) the 'horizontal' test, which asks whether the transaction was of the sort commonly undertaken by other companies in a debtor's industry." *In re Electro Sales & Serv., Inc.*, No. 21-50546, 2024 WL 3663199, at *4 (Bankr. W.D. Tex. Aug. 2, 2024) (citing *In re Patriot Place, Ltd*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013)).

21. Here, continued payment and performance of the Tenant Obligations easily passes muster under both the vertical and horizontal test. First, for purposes of the vertical test, the

Debtors routinely performed and/or paid for the Tenant Obligations in the ordinary course of business, pursuant to the terms of the applicable underlying lease agreement, prior to the Petition Date. Thus, a hypothetical creditor would expect that the Debtors, whose business is leasing their properties to high credit quality tenants, would certainly expect that the Debtors would continue to perform and/or pay for the Tenant Obligations. Accordingly, the vertical test is satisfied.

22. Second, for purposes of the horizontal test, continued performance and payment of obligations owed to tenants under the applicable underlying lease agreements constitutes a routine, commonplace operation of businesses involved in the industry. Thus, continued performance and/or payment of the Tenant Obligations falls well within the scope of ordinary course transactions for businesses within the Debtors' industry. Accordingly, the horizontal test is satisfied.

23. For the reasons set forth above, the Debtors respectfully request that the Court authorize, but not direct, the Debtor to continue to perform and/or pay, in the Debtors' discretion, the Tenant Obligations in the ordinary course of business, whether arising pre- or post-petition, pursuant to section 363(c) of the Bankruptcy Code.

## II. Payment of Tenant Obligations Is Warranted Under Sections 363(b) and 105(a) of the Bankruptcy Code

24. To the extent that the relief requested herein is found to fall outside of the ordinary course of business, the Court may, nonetheless, grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code, which provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See,*

*e.g.*, *Black v. Shor (In re BNP Petroleum Corp.)*, 642 F. App'x 429, 435 (5th Cir. 2016) (noting that section 363 "requires that a sale of the estate's assets be supported by an articulated business justification, good business judgment, or sound business reasons") (internal quotation and citation omitted); *Inst. Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.* (*In re Cont'l Air Lines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal citation omitted); *ASARCO, Inc. v. Elliot Mgmt. (In re ASARCO L.L.C.)*, 650 F.3d 593, 601 (5th Cir. 2011) ("Section 363 of the Bankruptcy Code addresses the debtor's use of property of the estate and incorporates a business judgment standard [t]he business judgment standard in section 363 is flexible and encourages discretion."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.") (internal citation omitted).

25. In addition, the Court has authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein because such relief is necessary for the Debtors to carry out their duties under section 1107(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ*, 273 B.R. at 497). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); *see In re CoServ*, 273 B.R. at 491-93 & n.6 (holding that sections 105 and 1107 of the

Bankruptcy Code provide authority for a debtor-in-possession to pay prepetition claims). Moreover, Bankruptcy Rule 6003 itself implies that the payment of prepetition obligations may be permissible within the first 21 days of a case where doing so is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Accordingly, the Bankruptcy Code authorizes the postpetition payment of prepetition claims where, as here, such payments are critical to preserving the going-concern value of a debtor's estates.

26.     It is critical that the Debtors' relationships with their tenants remain uninterrupted. Without the ability to satisfy Tenant Obligations, existing tenants may become concerned and attempt to assert and/or exercise perceived rights of setoff and/or recoupment or simply withhold postpetition rent (regardless of lawful entitlement).[6] Therefore, absent the relief requested, the Debtors' operations will be immediately and irreparably harmed.

27.     Moreover, the Debtors negotiate and enter into new leases regularly, many with current tenants with whom the Debtors have outstanding Tenant Obligations and with new prospective tenants. The Debtors' inability to pay Tenant Obligations may harm their ability to negotiate favorable leases with new or existing tenants. Considering the potential impact on the Debtors' business, absent the relief requested herein, the Debtors' request for authorization to pay or otherwise satisfy any prepetition Tenant Obligations is appropriate and in the best interest of the Debtors, their estates, and creditors, and therefore should be granted in the Chapter 11 Cases.

28.     Furthermore, by permitting the Debtors to perform and/or pay the Tenant Obligations pursuant to the Motion, the Debtors will avoid being forced to prematurely seek to assume certain leases to permit the Debtors' performance and/or payment of any prepetition

---

[6] *See, e.g., In re HQ Glob. Holdings, Inc.*, 290 B.R. 78, 82-83 (Bankr. D. Del. 2003) (holding that a tenant had a right to recoup prepetition tenant improvement allowance obligations against postpetition rent due under a lease).

12

Tenant Obligations, which could impede the Debtors' efforts to right-size their lease portfolio and restructure to the detriment of the Debtors, their estates, and their stakeholders.

29. For the foregoing reasons, honoring the Tenant Obligations is necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases. Accordingly, the Court should authorize, but not direct, the Debtors, in the exercise of their business judgment and in their discretion, to honor the Tenant Obligations.

## EMERGENCY CONSIDERATION

30. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1 and Bankruptcy Rule 6003, which authorizes the Court to grant relief within the first twenty-one (21) days after the commencement of a chapter 11 case to the extent that relief is necessary to avoid immediate and irreparable harm. As described in detail above and in the First Day Declaration, immediate and irreparable harm would result if the relief requested herein is not granted. Accordingly, the Debtors submit that the requirements of Bankruptcy Rule 6003 are satisfied.

## DEBTORS' COMPLIANCE WITH BANKRUPTCY RULE 6004(A) AND WAIVER OF BANKRUPTCY RULE 6004(A) AND (H)

31. With respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors request that the Court find that notice of this Motion is adequate under Bankruptcy Rule 6004(a) and waive the fourteen (14) day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary to avoid immediate and irreparable harm to the Debtors. Thus, cause exists for the Court to find that notice of this Motion satisfies Bankruptcy Rule 6004(a) and waive the fourteen (14) day stay under Bankruptcy Rule 6004(h).

**RESERVATION OF RIGHTS**

32. Nothing in this Motion is intended to be nor shall be deemed: (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors; (b) a waiver or limitation of the Debtors', the September 2029 Ad Hoc Group's, the March 2029 Ad Hoc Group's, or any other party in interest's right to dispute the amount of, basis for, or validity of any claim; (c) a waiver of the Debtors', the September 2029 Ad Hoc Group's, the March 2029 Ad Hoc Group's, or any other party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) a promise or requirement to pay any particular claim; (f) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (h) an admission that any lien satisfied pursuant to this Motion is valid (and all rights to contest the extent, validity, or perfection or seek avoidance of all such liens are expressly reserved); or (i) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors', the September 2029 Ad Hoc Group's, the March 2029 Ad Hoc Group's, or any other party in interest's rights to dispute such claim subsequently.

**NOTICE**

33. Notice of the Motion will be served on: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the September 2029 Ad Hoc Group; (c) counsel to the March 2027 Ad Hoc Group; (d) counsel to the March 2029 Ad Hoc Group; (e) counsel to

14

the Successor Agent; (f) counsel to the DIP Lenders; (g) the Banks; (h) the creditors listed on the Debtors' consolidated list of 30 creditors holding the largest unsecured claims; (i) the United States Attorney for the Southern District of Texas; (j) the Internal Revenue Service; (k) the Securities and Exchange Commission; (l) the state attorneys general for states in which the Debtors conduct business; (m) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (n) any other party entitled to notice pursuant to Bankruptcy Local Rule 9013-1(d). The Debtors submit that, under the circumstances, no other or further notice is required.

34. A copy of the Motion is available (a) on the Court's website, at www.txs.uscourts.gov and (b) free of charge, on the website maintained by the Debtors' proposed claims and noticing agent, Kroll Restructuring Administration LLC, at https://restructuring.ra.kroll.com/OPI.

[*Remainder of Page Intentionally Left Blank*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Orders granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: October 30, 2025
Houston, Texas

Respectfully submitted,

/s/ Timothy A. ("Tad") Davidson II
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email: taddavidson@hunton.com
ashleyharper@hunton.com
pguffy@hunton.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Andrew M. Parlen (NY Bar No. 5370085)
Anupama Yerramalli (NY Bar No. 4645859)
Ashley Gherlone Pezzi (NY Bar No. 5754213)
Anthony R. Joseph (IL Bar No. 6329886)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Email: ray.schrock@lw.com
andrew.parlen@lw.com
anu.yerramalli@lw.com
ashley.pezzi@lw.com
anthony.joseph@lw.com

*Proposed Attorneys for the Debtors
and Debtors in Possession*

**CERTIFICATE OF SERVICE**

      I certify that on October 30, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

      */s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II